## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## CINCINNATI DIVISION

| | | |
|---|---|---|
| **Monica McCoy**<br>11286 Hanover Road<br>Forest Park, Ohio 45240, | : | Case No. 1:23-cv-294 |
| | : | **COMPLAINT** |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **UnitedHealthcare Insurance Company**<br>c/o CT Corporation Systems, agent for<br>service of process,<br>1300 E 9th Street, Suite 1010<br>Cleveland, OH 44114, | : | |
| | : | |
| **UnitedHealthcare Specialty Benefits, LLC**<br>c/o CT Corporation Systems, agent for<br>service of process,<br>128 State Street #3<br>Augusta, ME 04330, | : | |
| | : | |
| and | : | |
| **The Talbert House Welfare Benefit Plan**<br>c/o The Talbert House, acting as Plan<br>Administrator,<br>2600 Victory Parkway<br>Cincinnati, Ohio 45206. | : | |
| Defendants. | | |

Pursuant to Federal Rules of Civil Procedure 7(a)(1), 8, 10, and 57, Plaintiff Monica McCoy ("Ms. McCoy"), by undersigned counsel retained to represent Ms. McCoy through the Volunteer Lawyers Project ("VLP"), respectfully avers as follows:

### The Parties

1.      Ms. McCoy, a citizen of Ohio and resident of Hamilton County, Ohio, is a participant in Defendant Talbert House Welfare Benefit Plan (the "Plan"), which provides employee welfare benefits, including short-term disability ("STD") and long-term disability

("LTD") benefits, to full-time, *i.e.*, 30 hours or more per week, employees of Talbert House ("Talbert").

2.      The Plan is regulated by the Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated pursuant thereto ("ERISA").

3.      The Plan is an employee welfare plan, as the term "employee welfare plan" is defined at ERISA § 3(1), *codified at* 29 U.S.C. § 1002(1).

4.      The Plan is only a nominal defendant because it breached no fiduciary duties owed to Ms. McCoy under ERISA and all of the Plan's STD benefits claimed by Ms. McCoy are fully insured by UnitedHealthcare Insurance Company ("UHC Insurance").

5.      UHC Insurance is an insurance company based in Hartford, Connecticut that is licensed to do business in Ohio.

6.      Until becoming disabled due to her suffering a stroke on or about November 28, 2022, Ms. McCoy not only was an employee of Talbert who had premiums deducted from her paychecks for ERISA-protected Plan welfare benefits, such as health insurance provided through the Plan, but was a participant in the Plan, which provided *inter alia* STD and LTD benefits.

7.      Talbert is listed in both the Plan's Form 5500's filed with the United States Department of Labor ("DOL") and the Plan's current Summary Plan Description ("SPD") as the plan sponsor and the named administrator of the Plan, as the terms "plan sponsor" and "administrator" are defined at ERISA § 3(16), *codified at* 29 U.S.C. § 1002(16).

8.      UHC Insurance is identified as the "Insurance Carrier" in the Plan's SPD.

9.      The Plan's SPD states that "[t]he Plan is administered on behalf of the Plan Administrator by the Insurance Carrier pursuant to the terms of the group insurance policy issued by the Insurance Carrier."

10.     The group insurance policy issued by UHC Insurance to Talbert acts as both the Plan document and the SPD as to STD benefits.

11.     Among the Plan benefits underwritten and insured by UHC Insurance are group life, accidental death and dismemberment, STD, and LTD benefits.

12.     Under the terms of the SPD, UHC Insurance administers the Plan's insured benefits, including (without limitation) STD and LTD benefit coverage and STD and LTD benefits.

13.     As the entity designated in the Plan's SPD as the functional administrator of the Plan, UHC Insurance is a functional fiduciary of the Plan, as the term "fiduciary" is defined at ERISA § 3(21), *codified at* 29 U.S.C. § 1002(21).

14.     Under the terms of the SPD, UHC Insurance is the claims administrator of STD benefits under the Plan.

15.     As the claims administrator of STD benefits under the Plan, UHC Insurance is a Plan fiduciary, as the term "fiduciary" is defined at ERISA § 3(21), *codified at* 29 U.S.C. § 1002(21). *See*, *e.g.*, *Moore v. Lafayette Life Ins. Co.*, 458 F. 3d 416, 438 (6th Cir. 2006).

16.     UHC Insurance is a Plan fiduciary under ERISA because UHC Insurance exercises full authority and discretion in adjudicating Ms. McCoy's claim for STD and LTD benefits.

17.     UHC Insurance delegated its ERISA fiduciary duties to administer STD benefits claims for the Plan to an affiliate, *viz.*, UnitedHealthcare Specialty Benefits, LLC ("UHC Specialty").

18.     UHC Specialty is incorporated in Maine with its principal place of business in Portland, Maine.

19.     UHC is not listed as licensed to do business in the state of Ohio on the Secretary of State's webpage.

20.     UHC Specialty, as the functional administrator of STD and LTD benefits claims for the Plan, owed ERISA fiduciary duties to the Plan and its participants and beneficiaries, including Ms. McCoy. *See*, *e.g.*, *Moore v. Lafayette Life Ins. Co.*, 458 F. 3d 416, 438 (6th Cir. 2006).

## Claims

21.     Pursuant to 28 U.S.C. § 2201, ERISA § 502(a)(3), *codified at* 29 U.S.C. § 1132(a)(3), and ERISA § 502(a)(1)(B), *codified at* 29 U.S.C. § 1132(a)(1)(B), Count 1 of this Complaint seeks declaratory, injunctive and equitable relief to require UHC Insurance and UHC Specialty to provide to Ms. McCoy, per her counsel, both a complete copy of the administrative record and internal procedures and protocols regarding the administration of the Plan as required by ERISA § 503, *codified at* 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, which is the ERISA claims regulation issued by the DOL (the "DOL Claims Regulation").

22.     Pursuant to 28 U.S.C. § 2201, ERISA § 502(a)(3), *codified at* 29 U.S.C. § 1132(a)(3), and ERISA § 502(a)(1)(B), *codified at* 29 U.S.C. § 1132(a)(1)(B), Count 2 of this Complaint seeks a declaration that Ms. McCoy may bring this suit on the ground that Defendants UHC Insurance and UHC Specialty have failed to issue a timely determination of Ms. McCoy's STD claim under the timelines established in the DOL Claims Regulation and those of the Plan, as well as violating other provisions of the DOL Claims Regulation and the Plan document.

23.     Pursuant to ERISA § 502(a)(1)(B), *codified at* 29 U.S.C. § 1132(a)(1)(B), Count 3 of this Complaint seeks an award of STD benefits payable by UHC Insurance due to Ms. McCoy's disability.

## Jurisdiction

24.     Jurisdiction is proper in this district pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) & (f).

## Venue

25.     Inasmuch as UHC Insurance's and UHC Specialty's breaches of its ERISA fiduciary and regulatory duties and their wrongful denial of benefits occurred in this district, and Ms. McCoy's entitlement to Plan STD benefits arose from her work at Talbert in this district, venue is proper in this district pursuant to 29 U.S.C. § 1391(b)(2) and ERISA § 502(e)(2), *codified at* 29 U.S.C. § 1132(e)(2).

## Ms. McCoy's Stroke Resulted in Her Disability

26.     Ms. McCoy has been an employee of Talbert for fourteen years.

27.     In November 2022, Talbert employed Ms. McCoy as an executive chef for halfway homes operated by Talbert with the title of "supervisor."

28.     On October 31, 2022, Ms. McCoy, suffering from chest pain and headache, went to a Christ Hospital urgent care facility which referred her to the Christ Hospital emergency room.

29.     Upon being seen at the Christ Hospital emergency room on October 31, 2022, Ms. McCoy was determined not to have suffered a stroke.

30.     Dr. Chambers's November 11, 2022 notes showed that Ms. McCoy had gallstones.

31.     The notes of Mohammad Gerdvisheh, M.D. from a November 14, 2022 visit detailed Ms. McCoy's gallstones and unrelated lower back pain.

32.     The November 15, 2022 notes of Jessica Martin, M.D. state that Ms. McCoy "works as an executive chef for halfway homes" operated by Talbert.

33. On November 29, 2022, Ms. McCoy went to the Christ Hospital Red Bank urgent care where she "present[ed] to urgent care for dizziness for one day. States out of the blue she started to feel dizzy yesterday. States today she woke up with worsening dizziness and shaking."

34. Ms. McCoy was sent to the Christ Hospital emergency room for follow up treatment for and diagnosis of the cause of her symptoms.

35. An EKG on Ms. McCoy led to an order for Ms. McCoy to receive a December 9, 2022 CT scan.

36. The December 9, 2022 CT scan of Ms. McCoy's head performed by Thomas Nogueira, M.D. provided the impression of an "[i]rregular low-attenuation right basal ganglia region for which an area of ischemia as a potential consideration."

37. "About 87% of all strokes are ischemic strokes, in which blood flow to the brain is blocked." CDC, Stroke Facts,

https://www.cdc.gov/stroke/facts.htm#:~:text=Stroke%20is%20a%20leading%20cause%20of%20serious%20long%2Dterm%20disability.&text=Stroke%20reduces%20mobility%20in%20more,survivors%20age%2065%20and%20older.

38. On December 9, 2022, Ms. McCoy's attending physician, Elise M. Chambers, M.D., issued a letter that states in relevant part:

To Whom It May Concern:

**Due to medical reasons, Monica McCoy will be unable to work until further notice.**

If you have any questions or concerns, please don't hesitate to call.

(Emphasis added).

39. Following the December 9, 2022 CT scan of Ms. McCoy's head, a December 19, 2022 MRI of Ms. McCoy's head was ordered because of "Abnormal head CT. Dizziness."

40. The December 19, 2022 MRI report prepared by Thomas Brown, M.D. states:

**Probable late subacute to chronic lacunar type infarct within the right anterolateral thalamus and adjacent posterior limb right internal capsule**. This finding does demonstrate some faint enhancement which is typical for late subacute infarct. There is no longer any significant true diffusion restriction detected within this lesion. Based on this imaging appearance, the lesion is believed to be one week to several weeks in age. No intracranial hemorrhage or mass appreciated.

(Emphasis added).

41.    To clarify the terminology used by Dr. Brown, Ms. McCoy had a stroke: "Infarction or Ischaemic stroke are both names for a stroke caused by a blockage in a blood vessel in the brain."

www.stroke4carers.org/?p=10#:~:text=Infarction%20or%20Ischaemic%20stroke%20are,blood%20vessels%20of%20the%20brain.

42.    "[T]he effects of stroke may range from mild to severe disabilities depending on the type, severity, and location of the stroke. The symptoms may be temporary or permanent." *Stroke*, https://www.ninds.nih.gov/health-information/disorders/stroke.

43.    On the following day, December 20, 2022, Dr. Chambers examined Ms. McCoy.

44.    Dr. Chambers noted that Ms. McCoy's "gait instability is slowly improving."

45.    Dr. Chambers, who specializes in internal medicine, but not neurology or the treatment of strokes, established a continuing treatment plan for Ms. McCoy based on a referral of Ms. McCoy to the Gardner Neuroscience Institute at the UC Medical Center.

46.    The Gardner Neuroscience Institute is the first hospital in the Cincinnati region to be designated as a comprehensive stroke center. https://www.uchealth.com/en/neuroscience-institute.

47.    The first available appointment at the Gardner Neuroscience Institute was on April 7, 2023, although Ms. McCoy was placed on a waiting list for earlier treatment.

48.     The notes from the April 7, 2023 examination of Ms. McCoy by a neurology fellow,

Felipe M. Ayala, M.D., at the University of Cincinnati's Gardner Neurological Institute state in

relevant part:

> **Neurological examination is significant for mild left sided weakness.** I reviewed her prior imaging with her and her daughter. **I explained that based on the size of her stroke, this would be consistent with ischemic stroke secondary to small vessel disease.** Based on the territory, it would also explain the slight weakness that she has at this time. **To complete the stroke work up, she should have TTE** [transthoracic cardiogram] **and cardiac event monitor to assess for atrial fibrillation.** She should be on aspirin and higher dose statin for secondary stroke prevention. She would benefit from further optimization of her vascular risk factors especially her blood pressure.

(Emphasis added).

49.     Dr. Ayala also noted:

> She has silver specks in her vision which can last about a few minutes. **She does have nausea and photophobia. She has headaches during these symptoms. She has a headache today.** She has no history of migraines. She started having headaches in December 2022. She takes extra strength tylenol 3 times a week along with naprosyn. **She'll have a headache starting at the top of head and radiating down the left side along with neck as well. She notes that she has some stiffness in her in left arm and left neck. She uses a cane for ambulation. She had a fall last week but she did not lose consciousness.**

(Emphasis added)

50.     The attending neurologist, Yasmin Aziz, M.D., further noted:

> I saw and evaluated the patient with the fellow -- **Ms McCoy had a lacunar stroke in her R IC/R thalamic stroke (measures exactly 1.5cm)** in December. I'd like her to at least be on ASA [aspirin regimen], increase statin to high intensity statin, and really work on BP management with her PCP. Given that she has new onset migraines, we started a beta blocker for her with PRN nurtec as an abortive.

(Emphasis added).

51.     After she was placed on the cardiac event monitor, Ms. McCoy was diagnosed as

suffering from heart arrythmia.

52.     To address balance issues, Ms. McCoy is receiving physical therapy.

53.     Ms. McCoy is continuing to receive treatment for her stroke and arrythmia as of the filing of this lawsuit.

### UHC's Failures in Handling Ms. McCoy's STD Claim

54.     UHC Specialty's personnel is required to administer Ms. McCoy's STD claim in accordance with the provisions of the Plan document and the DOL Claims Regulation as codified at 29 U.S.C. § 2560.503-1.

55.     The Plan document provides that a claimant is "disabled" as follows:

The Covered Person is Disabled or has a Disability when We [UHC] determine that:

1.  he is not Actively at Work and is unable to perform some or all of the Material and Substantial Duties of his regular Occupation due to his Sickness or Injury; and
2.  he has an 20% or more loss in Pre-Disability Weekly Earnings due solely to the same Sickness or Injury; and
3.  he is under the Regular Care of a Physician.

56.     The Plan document further states: "**Material and Substantial Duties**: duties that 1. are normally required for the performance of the Covered Person's Regular Occupation; and 2. cannot be reasonably omitted or modified."

57.     The Plan document further states: "**Regular Occupation means**: the occupation which the Covered Person is routinely performing when his Disability occurs."

58.     The Plan document sets forth the following provisions for UHC Specialty's initial handling of disability claims:

**Notice of a decision to deny a claim (in whole or in part) shall be furnished to the claimant within 45 days following the receipt of the claim**. Up to two extensions of 30 days each will be allowed for processing the claim for matters beyond the Plan's control or if additional information is needed from the claimant. If special circumstances require an extension of time for processing the claim, written notice of the extension shall be furnished to the claimant prior to the expiration of the initial 45 day period.

**The notice of extension shall indicate the special circumstances requiring the extension and the date by which the notice of decision with respect to the claim is**

**expected** to be furnished. **If a claim is denied (in whole or in part) notice shall be provided to the claimant in writing and shall set forth:** 1) **the reason(s) for the denial which must contain a complete discussion of why the claim was denied, including the basis for disagreeing with the views of medical or vocational experts whose advice was obtained either by the claimant** or by the plan in connection with the denial; 2) **the internal rules, guidelines, protocols, standards or other similar criteria of the plan that were relied on in denying a claim or a statement that none exists;** 3) **a statement that the claimant is entitled to receive, upon request, the entire claim file and other relevant documents**; 4) reference to the provision(s) of the Plan on which the denial is based; 5) a description of any additional material or information necessary for claimant to perfect the claim, if the claim was denied because the claimant failed to provide all necessary information, and an explanation of why such material or information is necessary; 6) an explanation of the claim review procedure. Notices must also be provided in a culturally and linguistically appropriate manner in certain situations. If written notice of the denial is not furnished to the claimant within 45 days (or if an extension was required, 105 days) from the date the claim was received, the claim shall be deemed denied and the claimant shall then be permitted to proceed with the procedure set forth below.

(Emphasis added).

59.     The DOL Claims Regulation contains the following provision for the timing of decisions of disability claims:

> **In the case of a claim for disability benefits, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination within a reasonable period of time, but not later than 45 days after receipt of the claim by the plan. This period may be extended by the plan for up to 30 days, provided that the plan administrator both determines that such an extension is necessary due to matters beyond the control of the plan and notifies the claimant, prior to the expiration of the initial 45-day period, of the circumstances requiring the extension of time and the date by which the plan expects to render a decision.** If, prior to the end of the first 30-day extension period, the administrator determines that, due to matters beyond the control of the plan, a decision cannot be rendered within that extension period, the period for making the determination may be extended for up to an additional 30 days, provided that the plan administrator notifies the claimant, prior to the expiration of the first 30-day extension period, of the circumstances requiring the extension and the date as of which the plan expects to render a decision. In the case of any extension under this paragraph (f)(3), the notice of extension shall specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues, and the claimant shall be afforded at least 45 days within which to provide the specified information.

29 C.F.R. § 2560.503-1(f)(3) (emphasis added).

- 10 -

60.     Ms. McCoy's claim for STD benefits was filed in late December 2022, as evidenced by a letter dated January 1, 2023 from UHC Specialty to Ms. McCoy, that stated "We received your request for benefits."

61.     UHC Specialty logged Ms. McCoy's STD claim as having been received by UHC Specialty "as of" January 1, 2023.

62.     At no time did UHC Specialty provide any notification to Ms. McCoy that UHC Specialty needed more than forty-five (45) days from receipt of her STD claim to decide her STD claim, the circumstances requiring the extension, and the date as of which UHC Specialty expected to render a decision.

63.     At no time did UHC Specialty provide any notification to Ms. McCoy of the need for a second thirty (30) day extension, the circumstances requiring a second thirty-day extension, and the date as of which UHC expects to render a decision.

64.     More than one hundred five (105) days have passed since UHC Specialty and the Plan received Ms. McCoy's STD claim on or before January 1, 2023.

65.     The DOL Claims Regulation also provides that an adverse determination of a disability claim must provide the following:

(vii) In the case of an adverse benefit determination with respect to disability benefits—

(A) **A discussion of the decision, including an explanation of the basis for disagreeing with or not following**:

(i) **The views presented by the claimant to the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant**;

(ii) **The views of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination**, without regard to whether the advice was relied upon in making the benefit determination;

*****

(C)     Either **the specific internal rules, guidelines, protocols, standards or other similar criteria of the plan relied upon in making the adverse determination** or, alternatively, a statement that such rules, guidelines, protocols, standards or other similar criteria of the plan do not exist; and

(D)     **A statement that the claimant is entitled to receive**, upon request and free of charge, reasonable access to, and **copies of**, **all documents, records, and other information relevant to the claimant's claim for benefits**. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

29 C.F.R. § 2560.503-1(g)(1)(vii)(A), (C) & (D) (emphasis added).

66.     As part of the initial submission of the claim, Ms. McCoy's attending physician, Dr. Chambers, submitted an Attending Physician's Disability Statement (the "Statement"), dated December 30, 2022, to UHC.

67.     Dr. Chambers identified the following diagnoses of Ms. McCoy in the Statement: stroke (Z86.73), primary hypertension (I10), dizziness/vertigo (R42), weakness (R53.1), abnormal findings on diagnostic imaging of other body structures (R93.0), and other abnormalities of gait and mobility (R26.8).

68.     Based on her examinations and diagnoses, Dr. Chambers identified in the Statement Ms. McCoy's limitations as "**cannot drive**, do grocery shopping, unable to do strenuous chores, **cannot stand for long periods of time**, unable to lift, **unable to cook**, do household chores." (Emphasis added).

69.     Based on her examinations and diagnoses, Dr. Chambers identified in the restrictions that she placed on Ms. McCoy as "Driving, lifting, standing for long periods of time."

70.     Dr. Chambers also incorporated by reference the "attached result notes and labs" as support for her conclusions that Ms. McCoy could not perform all of the material duties of her job.

71.     Dr. Chambers's Statement identified Ms. McCoy's expected "return to work" date as March 9, 2023.

72.     Talbert's December 28, 2022 Employer's Report of Claim identified Ms. McCoy's position as "Supervisor I" at Talbert.

73.     Talbert also submitted a summary of Ms. McCoy's position, "Operations Supervisor, S 1, Exempt," with the December 28, 2022 Employer's Report of Claim that included among "Essential Functions/Physical Demands" the statement: "Positional: **Driving in accordance with job duties assigned. Occasional standing and walking. Constant sitting.**" (Emphasis added).

74.     Ms. McCoy's December 27, 2022 Employment and Claim Information statement identified the following as parts of her job that she was unable to perform: "Driving, cleaning, standing, impaired vision, Admin work, concentrating, slurred speech, Lifting."

75.     The fax log on the top of some materials sent by Talbert has a date of January 26, 2023.

76.     UHC Specialty's March 14, 2023 adverse determination was forty-seven (47) days after January 26, 2023.

77.     On or about March 7, 2023, UHC Specialty received a second statement from Dr. Chambers that identified a return-to-work date with restrictions and limitations.

78.     A true and accurate copy of the second statement from Dr. Chambers, which was incomplete in the administrative record as produced by UHC Specialty on or about April 13, 2023, is attached as Exhibit 1.

79.     UHC Specialty's Claims Specialist Michelle Reynolds administered Ms. McCoy's STD claim.

80.    UHC Specialty's Reynolds did not retain a medical resource with expertise in neurology to review Ms. McCoy's STD claim.

81.    Instead UHC Specialty's Reynolds referred Ms. McCoy's file for a records review to be performed by Michele Lessard, R.N., who is a registered nurse licensed in Maine.

82.    UHC Specialty's computer notes identify a primary diagnosis for Ms. McCoy of "I60.00 Nontraumatic subarachnoid hemorrhage from unspecified carotid siphon and bifurcation."

83.    Dr. Chambers's diagnoses in her Statement not only differ from that in UHC Specialty's computer notes, but do not include the diagnosis identified by UHC Specialty.

84.    No UHC Specialty internal rules, guidelines, protocols, standards or other similar criteria were produced as to how UHC Specialty elected the diagnosis of "I60.00 Nontraumatic subarachnoid hemorrhage from unspecified carotid siphon and bifurcation."

85.    UHC Specialty's file states that the "Total Predicted Duration" for a diagnosis of "I60.00 Nontraumatic subarachnoid hemorrhage from unspecified carotid siphon and bifurcation" is 77.

86.    The administrative record produced on April 13, 2023 provides no documentation or information regarding the protocol or process that UHC Specialty used to determine that the "Total Predicted Duration" for a diagnosis of "I60.00 Nontraumatic subarachnoid hemorrhage from unspecified carotid siphon and bifurcation" is 77.

87.    The administrative record produced on April 13, 2023 provides no documentation or information regarding to what "77" refers, such as minimum or average days of disability, which is information that should be in UHC Specialty's internal rules, guidelines, protocols, standards or other similar criteria on which UHC relied on in denying a claim.

88.     No UHC Specialty internal rules, guidelines, protocols, standards or other similar criteria have been produced as to how 77 was calculated or to what it refers.

89.     On March 14, 2023, approximately seventy-three (73) days after UHC Specialty sent Ms. McCoy that it had received her claim on January 1, 2023, UHC Specialty's Reynolds denied Ms. McCoy's STD claim based on the following cursory analysis that did not mention Ms. McCoy's stroke or explain why UHC had rejected the medical conclusion of Ms. McCoy's attending physician that Ms. McCoy could not return to work until March 9, 2023:

> Your date of disability was determined to be November 30, 2022. You must fulfill the Elimination Period in order to receive benefits. Your policy outlines your Elimination Period is 30 consecutive days and your Elimination Period would have ended on December 30, 2022.
>
> We received medical records for review from your provider from October 31, 2022 to January 10, 2023 and confirmed with the doctor's office you have not been seen past this date. Per the review of available medical records, disability was not supported past December 20, 2022, and benefits would not have started until December 30, 2022 due to the elimination period.
>
> Since medical records did not support additional time beyond the Elimination Period benefits are not payable and your claim is now closed.

90.     A true and accurate copy of the March 14, 2023 adverse determination letter is attached as Exhibit 2.

91.     Contrary to the requirements in the Plan document and the DOL claims regulation, the March 14, 2023 adverse determination letter provides no discussion of Dr. Chambers's medical determination that Ms. McCoy could not return to work prior to March 9, 2023.

92.     Contrary to the requirements in the Plan document and the DOL claims regulation, the March 14, 2023 adverse determination letter fails to note that Ms. McCoy had suffered a stroke.

93.     Contrary to the requirements in the DOL claims regulation, the wording of the March 14, 2023 adverse determination letter also fails to advise Ms. McCoy that she is entitled to

receive copies of documents and information relevant to the benefits determination without charge and upon written request, but rather states only that she is "**entitled to receive**, upon request and without charge, **reasonable access to copies** of all documents, records, or other information that are [*sic*] relevant to your benefit determination." (Emphasis added).

94.     On March 23, 2023, Ms. McCoy, prior to retaining undersigned counsel, sent an email to UHC Specialty advising that she "wish[ed] to appeal your decision to not pay my Short Term claim."

95.     On March 28, 2023, UHC Specialty's Reynolds left a voicemail for Ms. McCoy stating both that Ms. McCoy needed to submit a letter if she wanted to appeal the March 14, 2023 adverse determination and that her March 23, 2023 email was not effective as an appeal.

96.     No Plan document requires an appeal to be a letter.

97.     The March 14, 2023 adverse determination letter states in relevant part as to how Ms. McCoy could submit an appeal:

> If you disagree with our decision, in whole or in part, and wish to appeal it, you are entitled to a full and fair review of the decision. **Your request for review must be in writing and must be received in our office within 180-days from the date that you receive this letter, or our decision will be final.** Forward your appeal request, along with any comments or additional information that you feel would assist in our review of or substantiate your claim.

(Emphasis added).

98.     Among the ways identified in the March 14, 2023 adverse determination letter for Ms. McCoy to communicate an appeal and provide information in support of an appeal is "Email: FPCustomerSupportuhc.com (unsecured unless you are a registered Cisco user)."

99.     Emails are writings. *See*, *e.g.*, *FINRA v. Axis, Inc.*, 951 F. Supp. 2d 826, 832 (Md. 2013); *PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1226 (D. Colo. 2009).

100.    Ms. McCoy's March 23, 2023 email was an effective written communication that triggered the time for UHC Specialty to decide Ms. McCoy's appeal.

101.    More than fifty (50) days have passed since Ms. McCoy's March 23, 2023 appeal without the grant or denial of benefits on appeal by UHC Specialty.

102.    On April 5, 2023, Ms. McCoy's counsel sent a letter to UHC Specialty requesting production of a copy of the administrative record, *i.e.*, all documents, records, and other information relevant to Ms. McCoy's claim for benefits, as "relevant" is identified in 29 C.F.R. § 2560.503-1(m)(8).

103.    On April 13, 2023, UHC Specialty produced an incomplete set of documents, records, and other information relevant to Ms. McCoy's claim for benefits, as "relevant" is identified in 29 C.F.R. § 2560.503-1(m)(8).

104.    An incomplete, largely unreadable page from the documents produced on April 13, 2023 is attached as Exhibit 1.

105.    The administrative record also states that Ms. McCoy's claim is not Type 1 or Type 2.

106.    The administrative record contains no internal rule, guideline, protocol, standard or other similar criteria that would identify what claims are Type 1 or Type 2 claims.

107.    On April 24, 2023, Ms. McCoy's counsel sent a letter to UHC Specialty requesting supplementation of the April 13, 2023 production. A true and accurate copy of that letter is attached as Exhibit 3.

108.    UHC Specialty has neither responded to the April 24, 2023 documentation letter nor supplemented its April 13, 2023 production.

109. On April 24, 2023, Ms. McCoy's counsel also sent a letter to UHC Specialty appealing the March 14, 2023 adverse determination of Ms. McCoy's STD claim with supporting documentation that stated *inter alia*:

> UHC's adverse determination letter ignores: (1) the December 30, 2022 medical determination of Ms. McCoy's attending physician that Ms. McCoy has restrictions and limitations (including, but not limited to, not driving, which is a requirement of Ms. McCoy's regular occupation) that preclude her from returning to work before March 9, 2023 (as recorded in UHC's administrative record); (2) Ms. McCoy's suffering a stroke in or shortly before December 2022 (as recorded in UHC's notes in UHC's administrative record); (3) Ms. McCoy's risk of falling for which she is receiving physical therapy at the Center for Balance and Dizziness (as recorded in UHC's notes in UHC's administrative record) that has caused Ms. McCoy's employer not to [permit her to] return to work prior to her seeing her primary care physician; (4) treatment of Ms. McCoy's stroke by Felipe Ayala, M.D., a neurologist at the University of Cincinnati Medical Center's Gardner Neuroscience Institute on April 7, 2023; (5) the April 21, 2023 attachment of a heart monitor for Ms. McCoy at the University of Cincinnati Medical Center ("UC Medical Center") based on Dr. Ayala's diagnosis of Ms. McCoy's left side weakness; and, (6) Dr. Chambers's second attending physician statement that UHC received shortly before issuance of its adverse determination.

110. A true and accurate copy of the April 24, 2023 appeal letter, without attachments, is attached as Exhibit 4.

111. On April 27, 2023, Ms. McCoy's counsel received a voicemail that stated:

> Hi, Attorney Fuchs. My name is Jeff Weeks. I'm from United HealthCare Insurance Company and I am managing the appeal for your client, Monica McCoy. Uh, calling to let you know that **I did review the claim today on appeal. I am sending it back to the claims department for additional review. I agree with your letter that their review was not complete.** Um, we will get the medical records from the Balance Center and from her neurologist from April, and I am also sending it, um recommended that they send it to a vocational review to confirm the restrictions and limitations, um, and the material and substantial duties of her occupation, including um the driving. So, if you have any questions, I can be reached directly at 207-482-4801. Thank you and have a nice day. Goodbye.

(Emphasis added).

112. Mr. Weeks did not respond to a May 1, 2023 voicemail left by Ms. McCoy's counsel that requested a call.

113.     On May 1, 2023, during a telephone call between Ms. McCoy's counsel and UHC Specialty's Reynolds, Ms. Reynolds advised counsel that she had received an email indicating that her adverse determination of Ms. McCoy's claim had been "overturned."

114.     On or about May 1, 2023, Ms. McCoy received an undated letter from UHC Specialty's Reynolds stating that Ms. McCoy's March 24, 2023 letter requesting an appeal had been referred to UHC Specialty's appeals group. A true and accurate copy of the undated letter is attached as Exhibit 5.

115.     Ms. McCoy did not send a letter on or about March 24, 2023 letter to UHC Specialty, although she had sent an email appeal on March 23, 2023 to UHC Specialty.

116.     Given the confusion created by UHC Specialty's undated letter in light of Mr. Weeks's voicemail, on May 2, 2023 Ms. McCoy's counsel sent UHC Specialty a letter requesting clarification of the status of the handling of Ms. McCoy's STD claim. A true and accurate copy of that May 2, 2023 letter without attachment is attached as Exhibit 6.

117.     Neither Ms. McCoy nor her counsel have received a response to the May 2, 2023 letter requesting clarification.

118.     On May 1, 2023, Ms. McCoy's counsel submitted to UHC Specialty via email a "letter and attachments to supplement the April 24, 2023 formal appeal of the March 14, 2023 denial letter issued by UnitedHealthcare Specialty Benefits ('UHC') in which UHC held that a stroke survivor, Ms. McCoy, who has left-side weakness, instability, vertigo, and arrythmia was no long disabled only a few weeks after her stroke." A true and accurate copy of the May 1, 2023 letter, without attachments, is attached as Exhibit 7.

119.     On May 8, 2023, counsel for Ms. McCoy received a UHC Specialty letter, dated April 27, 2023, *i.e.*, eleven days after the date that the letter had purportedly been sent, that stated

that UHC Specialty had "overturned" the March 14, 2023 adverse decision regarding Ms. McCoy's STD claim.

120.   The letter, signed by Jeff Weeks, and dated April 27, 2023, did not grant STD benefits to Ms. McCoy, but instead purported to return Ms. McCoy's STD claim to UHC Specialty's claims department for further review.

121.   A true and accurate copy of the UHC Specialty letter, dated April 27, 2023, is attached as Exhibit 8.

122.   The April 27, 2023 letter states that Ms. McCoy's counsel would be contacted by UHC Specialty's claims department "shortly."

123.   No further contact has been initiated by UHC Specialty's claims department to Ms. McCoy's counsel.

124.   No further contact has been initiated by UHC Specialty's claims department to Ms. McCoy other than the undated letter referencing the nonexistent March 24, 2023 letter from Ms. McCoy.

125.   No documentation provided by UHC or UHC Specialty authorizes a remand from appeals to the claims department at UHC Specialty.

126.   The DOL Claims Regulation does not authorize the remand by UHC Specialty's appeals department to UHC Specialty's claims department.

127.   No date has been identified by UHC Specialty as to when a new determination by UHC Specialty's claims department can be expected.

128.   The lack of both a timely decision and an expected date for any decision as to Ms. McCoy's STD claim is prejudicing Ms. McCoy as to her LTD claim because the Plan only provides for nine (9) weeks of STD benefits.

129.    More than nine (9) weeks have passed since Ms. McCoy's STD benefits became payable on or about December 31, 2022.

130.    To protect Ms. McCoy's entitlement to LTD benefits, an LTD claim was made on her behalf on May 2, 2023. A true and accurate copy of that claim is attached as Exhibit 9.

131.    UHC Specialty has not responded to the May 2, 2023 LTD claim.

132.    In light of the failure of UHC Insurance and UHC Specialty to comply with the terms of the Plan document and the DOL Claims Regulation, this suit ensued.

### Count 1: Injunctive, Declaratory and Equitable Relief as to Relevant Claim Documents

133.    Ms. McCoy incorporates by reference each of the foregoing averments as if fully restated herein.

134.    UHC Specialty failed to comply with the terms of the Plan document and the DOL Claims Regulation by its failure to produce all relevant documents and information in the administrative record produced on April 13, 2023.

135.    Both the DOL Claims Regulation and the Plan document required UHC Specialty to produce a complete copy of the administrative record and the internal procedures and protocols regarding the administration of the Plan.

136.    ERISA § 404(a)(1)(D), *codified at* 29 U.S.C. § 1104(a)(1)(D), requires a Plan fiduciary, such as UHC Specialty, to administer the Plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III" of ERISA.

137.    The failure of UHC Specialty to comply with the directives of the Plan document is a breach of UHC Specialty's fiduciary duties under ERISA § 404(a)(1)(D), *codified at* 29 U.S.C. § 1104(a)(1)(D).

138.     The failure of UHC Specialty to comply with the DOL Claims Regulation is a breach of UHC Specialty's fiduciary duties under ERISA.

139.     As a remedy for its disregard of the directives of the DOL Claims Regulation and the Plan document, this Court should order UHC Specialty to produce all relevant documents, records, and information, including (without limitation) (a) the complete second statement of Dr. Chambers received prior to the March 14, 2023 initial adverse determination, (b) the basis for determining that 77 was the expected duration of an unidentified factor that should be identified, and (c) the description of Type 1 and 2 claims.

140.     Pursuant to 29 U.S.C. § 1132(g)(1), upon granting relief to Ms. McCoy on Count 1, this Court should award Ms. McCoy a reasonable attorney's fee and costs of this action.

## Count 2: Declaration of Right to Sue

141.     Ms. McCoy incorporates by reference each of the foregoing averments as if fully restated herein.

142.     As the effective claims administrator for the Plan, UHC Specialty breached its fiduciary duties under ERISA by *inter alia*:

a.     its improper delay until March 14, 2023 in issuing its initial adverse determination of Ms. McCoy's STD Claim under the terms of the DOL Claims Regulation and the Plan document;

b.     its failure to discuss in its March 14, 2023 adverse determination letter the rationale for rejecting Dr. Chambers's conclusion that Ms. McCoy could not return to work until March 9, 2023;

c.     its failure to discuss or disclose the conclusory opinions of Nurse Lessard;

d.     its improper delay in failing to issue an appeal decision for more than forty-five (45) days following Ms. McCoy's March 23, 2023 appeal;

e.     its April 27, 2023 appeal decision that purported to overturn the March 14, 2023 adverse decision without providing a final decision granting or denying benefits for Ms. McCoy;

    f.      its remand of Ms. McCoy's claim to UHC Specialty's claims department to obtain specific documentation at the direction of UHC Specialty's appeals department, which undermines the independence of any UHC Specialty appeal and demonstrates the absence of a fair and impartial administrative procedure; and,

    g.      its failure to produce a complete copy of the Administrative Record.

143.    <u>29 C.F.R. § 2560.503-1(l)(2)</u> provides:

(2) Plans providing disability benefits.

(i) **In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan, except as provided in paragraph (l)(2)(ii) of this section.** Accordingly, **the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim**. **If a claimant chooses to pursue remedies under section 502(a) of the Act under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary.**

(ii) **Notwithstanding paragraph (l)(2)(i) of this section, the administrative remedies available under a plan with respect to claims for disability benefits will not be deemed exhausted based on de minimis violations that do not cause, and are not likely to cause, prejudice or harm to the claimant** so long as the plan demonstrates that the violation was for good cause or due to matters beyond the control of the plan and that the violation occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant. This exception is not available if the violation is part of a pattern or practice of violations by the plan. The claimant may request a written explanation of the violation from the plan, and the plan must provide such explanation within 10 days, including a specific description of its bases, if any, for asserting that the violation should not cause the administrative remedies available under the plan to be deemed exhausted. If a court rejects the claimant's request for immediate review under paragraph (l)(2)(i) of this section on the basis that the plan met the standards for the exception under this paragraph (l)(2)(ii), the claim shall be considered as re-filed on appeal upon the plan's receipt of the decision of the court. Within a reasonable time after the receipt of the decision, the plan shall provide the claimant with notice of the resubmission.

144.    Ms. McCoy has been without any income since she exhausted her paid leave at Talbert more than four months ago so that UHC Specialty's delays have prejudiced Ms. McCoy who continues to accrue living expenses and medical bills.

145.    Ms. McCoy's ability to pursue the administrative process has been prejudiced further by the undated UHC Specialty letter, received by Ms. McCoy on or about May 1, 2023, advising that Ms. McCoy's March 24, 2023 letter appealing the March 14, 2023 adverse determination had resulted in her claim being resubmitted to appeals due to the absence of a March 24, 2023 letter in the administrative record produced by UHC Specialty on April 13, 2023 and the April 24, 2023 appeal.

146.    Ms. McCoy's ability to pursue the administrative process also has been prejudiced by the failure of UHC Specialty to provide an expected date for determination of her STD claim that has been pending since at least January 1, 2023, *i.e.*, more than 130 days ago.

147.    Ms. McCoy's ability to pursue the administrative process also has been prejudiced by the failure of UHC Specialty's adverse determination letter to comply with the requirements of 29 C.F.R. § 2560.503-1(g)(1)(vii)(A)(i) & (ii) that the adverse determination letter must: (i) discuss the views presented by Ms. McCoy of health care professionals treating her, such as Dr. Chambers who determined that Ms. McCoy could not return to work until March 9, 2023, and provide an explanation for disagreeing with Dr. Chambers's conclusion; and, (ii) provide an explanation for adopting the opinion of Nurse Lessard whose advice was obtained on behalf of the Plan and adopted in contradiction of Dr. Chalmers's conclusions.

148.    Ms. McCoy's ability to bring suit has been prejudiced by the omissions from the administrative record produced on April 13, 2023 of those documents and that information requested in writing by Ms. McCoy's counsel because, as the Sixth Circuit has held, a "court's

review is limited to the administrative record." *Okuno v. Reliance Standard Life Ins. Co.*, 836 F. 3d 600, 607 (6th Cir. 2016).

149.    As previously alleged, the lack of both a timely decision and an expected date for any decision by UHC Specialty as to Ms. McCoy's STD claim prejudices Ms. McCoy as to her LTD claim.

150.    ERISA § 502(a)(3), *codified at* 29 U.S.C. § 1132(a)(3), provides equitable relief for a fiduciary's breach of its ERISA fiduciary duties.

151.    This Court should award declaratory, injunctive, and equitable relief to remedy UHC Specialty's breaches of its fiduciary duties in administering the claim and the appeal, including (without limitation) its failures to comply with 29 C.F.R. § 2560.503-1 and the terms of the Plan document.

152.    In particular, this Court should declare that, as to Ms. McCoy's STD claim, there is no reasonable claims process so that Ms. McCoy may now pursue her claim for STD benefits under ERISA § 502(a)(1)(B), *codified at* 29 U.S.C. § 1132(a)(1)(B), without the Court providing any deference to UHC Specialty's decision.

153.    The Court should also order that this case may promptly proceed to mitigate the ongoing harm to Ms. McCoy that threatens to expose her to bankruptcy.

154.    Pursuant to 29 U.S.C. § 1132(g)(1), upon granting relief to Ms. McCoy on this Count, this Court should award Ms. McCoy a reasonable attorney's fee and costs of this action.

### Count 3: Award of STD Benefits

155.    Ms. McCoy incorporates by reference each of the foregoing averments as if fully restated herein.

156.    Under ERISA § 502(a)(1)(B), *codified at* 29 U.S.C. § 1132(a)(1)(B) and the terms of the Plan, Ms. McCoy is entitled to STD benefits payable by UHC Insurance, whether considered under either a *de novo* or an arbitrary and capricious standard of review.

157.    Pursuant to 29 U.S.C. § 1132(g)(1), upon granting relief to Ms. McCoy on this Count, this Court should award Ms. McCoy a reasonable attorney's fee and costs of this action.

WHEREFORE, Plaintiff Monica McCoy, through undersigned counsel, respectfully prays this Court to award in conjunction or in the alternative:

a.      Declaratory, injunctive, and equitable relief to require UHC Specialty to provide to Ms. McCoy, per her counsel, a complete copy of the administrative record;

b.      Declaratory, injunctive, and equitable relief to authorize this suit to proceed;

c.      STD benefits from UHC Insurance, with back interest to January 1, 2023;

d.      Reasonable attorney's fees and costs incurred by Ms. McCoy and her counsel in this action; and,

e.      Such other and further legal and equitable relief as this Court may determine to be due, just, and proper.

Respectfully submitted,

s/Jack F. Fuchs/s
Jack F. Fuchs (0014197)
7700 Ashley View Drive
Cincinnati, Ohio 45227-3948
Phone: (513) 236-5502
Jfuchs50@gmail.com
Attorney for Plaintiff Monica McCoy